**DAYGLO COLOR CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80–8–01295.**

United States Court of International Trade.

May 30, 1985.

Serko & Simon, New York City (Luciana Lew and Joel K. Simon, New York City, on brief), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Veronica A. Perry, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

FORD, Judge:

This action is submitted to the Court for decision on cross-motions for summary judgment made pursuant to Rule 56 of the Rules of this Court. Based upon a review of the parties' "Statement of Material Facts As to Which There Is No Issue to Be Tried" the Court finds there are no material facts in dispute and the matter is ripe for summary judgment.

All the merchandise, except that covered by Entry 113861, was classified under Item No. 405.40, Tariff Schedules of the United States, which provides as follows:

> Products obtained, derived, or manufactured in whole or in part from any product provided for in subpart A or B or this part:
>
> . . .
>
> 405.40  Products chiefly used as
>           plasticizers . . . . . . . . . . 1.7¢ per lb. +
>                                        12.5% ad val.

The merchandise covered by Entry 113861 was classified under Item 403.60, TSUS, which will be considered separately, and provides as follows:

> Cyclic organic chemical products in any physical form having a benzenoid, quinoid, or modified benzenoid structure, not provided for in subpart A or C of this part:
>
> . . .
>
> 403.60  Other . . . . . . . . . . . . . . . . 1.7¢ per lb. +
>                                        12.5% ad val.

During the time of importation, Headnote 4, Schedule 4, Part 1, TSUS, required appraisement on the basis of American Selling Price (ASP) and read as follows:

4. The ad valorem rates provided in this part.shall be based upon the American selling price, as defined in section 402 or 402a of this Act, of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based

upon the United States value, as defined in the said section 402 or 402a.

Merchandise classifiable under 405.40, supra, may qualify for General System of Preferences (GSP) if it meets the requirements set forth in Section 503 of the Trade Act of 1974, 19 U.S.C. § 2463(b) as follows:

(b) The duty-free treatment provided under section 2461 of this title with respect to any eligible article shall apply only—

(1) to an article which is imported directly from a beneficiary developing country into the customs territory of the United States; and

(2) If the sum of (A) the cost or value of the materials produced in the beneficiary developing country or any 2 or more countries which are members of the same association of countries which is treated as one country under section 2462(a)(3) of this title, plus (B) the direct costs of processing operations performed in such beneficiary developing country or such member countries is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

The Secretary of the Treasury shall prescribe such regulations as may be necessary to carry out this subsection.

By virtue of the above statute and Headnote 4, supra, the appraisement of the imported merchandise on the basis of ASP excluded duty-free treatment as provided for under GSP, since it did not meet the 35% criteria. Plaintiff contends the imported merchandise, being wholly a manufacture of Korea, a Beneficiary Developing Country, is entitled to treatment under GSP by virtue of Customs own regulations, specifically 19 C.F.R. 10.176(c).[1] Additionally, plaintiff urges the court to hold the use of ASP for GSP eligible articles is inconsistent with the law and the legisla-

tive intent in the enactment of the GSP provisions. For the purposes of GSP, plaintiff contends the actual value is what Congress intended and, in any event, the 35% provision is not applicable to merchandise wholly produced in a Beneficiary Developing Country.

The merchandise, except that covered by Entry 113861, was invoiced as Mixed Toluene Sulfonamide. The merchandise covered by Entry 113861 was invoiced as Toluene Sulfonamide, appraised at $2.00 per pound and classified under Item 403.60, TSUS (a provision not eligible for GSP treatment). While plaintiff in its complaint alleges there are impurities which would prevent such classification and value, it has not proceeded with proof as to this entry. Accordingly, the claim relating to said entry is deemed abandoned and, therefore, is dismissed.

The manufacture of the Mixed Toluene Sulfonamide was described in the affidavit of Thomas J. Gray, Vice President of plaintiff corporation, which was submitted in support of plaintiff's motion for summary judgment. Three products were imported to manufacture the involved merchandise, i.e., crude oil, sulphur and salt.

The crude oil was refined into various materials, including toluene. This product was purchased by Joel Moonlan, the manufacturer of the imported merchandise. The sulfur was burned to form sulfur dioxide gas ($SO_2$) and then sulfur trioxide ($SO_3$) which were combined with water to form sulfuric acid ($H_2SO_4$). The sulfuric acid was mixed with additional sulfuric trioxide to form fuming sulfuric acid which is known as olerim. Salt was then reacted with sulfuric to form hydrochloric acid ($HC_1$). The $HC_1$ and the olerim were mixed, forming chlorosulfonic acid ($C_1SO_2C_1$). The latter and toluene were reacted to create toluene sulfonyl chloride ($C_6H_5SO_2C_1$).

---

1. Merchandise grown, produced, or manufactured in a beneficiary developing country. Merchandise which is wholly the growth, product, or manufacture of a beneficiary developing country, or an association of countries treated as one country under section 502(a)(3) of the

Trade Act of 1974 (19 U.S.C. 2462(a)(3)) and § 10.171(b), and manufactured products consisting of materials produced only in such country or countries, shall normally be presumed to meet the requirements set forth in this section.

In the course of this process, caustic soda (NaOH) was used to remove certain acidic impurities. The caustic soda was manufactured in Korea and did not enter the finished product as a component. The toluene sulfonyl chloride was reacted with amonia, produced in Korea, to form toluene and sulfonamide ($C_6H_5SO_2NH_2$). The ortho and para isomers of this chemical can be separated, either in the toluene sulfonyl chloride form or when in the toluene sulfonamide form. The ortho-toluene sulfonamide is used in the manufacture of saccharine. The para-toluene solfonamide is used as a plasticizer. The toluene, olerim and hydrochlone acid, which were transformed from the imported raw materials, are industrial chemicals which are bought and sold as such in Korea.

■ Plaintiff, in urging the court to adopt its position, correctly indicates that ASP was enacted to protect the American chemical industry from well-established industries of industrial countries. The GSP on the other hand was intended to assist developing countries in establishing industries. Plaintiff reasons, since Item A405.-50, supra, was designated as eligible for GSP treatment, if it conformed to the prerequisites in 19 U.S.C. § 2463(b), Congress could not have intended to have such merchandise excluded by utilizing ASP as a basis of appraisement. Whether appraisement on the basis of ASP would in all instances eliminate GSP treatment has not been established. However, 19 U.S.C. § 2463(b) utilizes the language "appraised value" which is a term not foreign to Congress, having enacted the appraisement statutes 19 U.S.C. 1401a and 1402 prior to the Trade Act of 1974. This, in conjunction with headnote 4, supra, also enacted as part of the Tariff Schedules of the United States, establishes the intent of Congress to have the merchandise involved appraised on the basis of ASP.

The position of plaintiff, that the merchandise should be appraised at actual value, is not substantiated by legislative history. In interpreting a statute, it is the duty of the court to ascertain the intent of the legislature in enacting the statutory provision. *United States v. American Trucking Ass'ns*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Kyocera International Inc. v. United States*, 2 CIT 91, 527 F.Supp. 337 (1981), affirmed, 681 F.2d 796 (CCPA 1982). The function of a court is to interpret, not legislate; therefore, when two statutory provisions conflict, i.e., ASP and GSP, the court has no alternative but to follow what it perceives to be the legislative intent. The fact that Congress did not repeal the ASP provisions at the time of the enactment of the Trade Act of 1974, which provided for GSP treatment, reinforces the court's interpretation that the basis of appraisement under ASP was intended to be utilized in the applicable tariff provisions. The repeal of the ASP provision did not occur until the enactment of the Trade Agreements Act of 1979, 19 U.S.C. 1401(a).

The parties have agreed that 100% of the invoiced value is less than 35% of the ASP appraised value of $0.95 per pound. Accordingly, it is unnecessary to determine whether the total value of the material utilized in the manufacture was of Korean origin within the meaning of 19 C.F.R. 10.-177(a).

■ Plaintiff further contends Customs must follow its own regulations. *Alberta Gas Chemicals, Inc. v. United States*, 1 CIT 312, 515 F.Supp. 780 (1981). However, an agency cannot by its own regulations override or amend a statute. *Socony Vacuum Oil Co. Inc. v. United States*, 44 CCPA 83, C.A.D. 641 (1957). *Standard Oil of New Jersey v. United States*, 32 CCPA 190, C.A.D. 306 (1945).

In view of the foregoing, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the action is dismissed. Judgment will issue accordingly.